UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ITG CIGARS INC., | Civil Action No.: 25-cv-317 |
| Plaintiff, | |
| - against - | |
| | March 4, 2025 |
| OG GRABBA LLC and SULEIMAN TANASH, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff, ITG Cigars Inc. ("ITG" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendants, OG GRABBA LLC ("OG Grabba") and SULEIMAN TANASH ("Tanash") (collectively, the "Defendants"), respectfully alleges as follows:

## **NATURE OF ACTION**

1.     It is often said that "imitation is the sincerest form of flattery."  Here, Defendants have engaged in the serial imitation of Plaintiff's cigar trademarks as part of a plan to unfairly compete with Plaintiff, in violation of the Lanham Act and state law.

2.     More particularly, ITG owns rights in the BACKWOODS Trademarks, including the BACKWOODS (Stylized) Trademarks (respectively defined in paragraphs 17 and 18 below), that are used by ITG in connection with its BACKWOODS brand line of cigars, as depicted on the following exemplary cigar packaging:

 

3.     The BACKWOODS Trademarks, including the BACKWOODS (Stylized) Trademarks, have become famous, synonymous with, and identifiers of, the cigars sold by Plaintiff as part of its BACKWOODS brand line of cigars.  The BACKWOODS Trademarks, including the BACKWOODS (Stylized) Trademarks, have been widely and continuously used for many years in connection with Plaintiff's BACKWOODS brand line of cigars and a host of ancillary goods.

4.     Defendants have blatantly and willfully infringed upon Plaintiff's rights in the BACKWOODS Trademarks, including the BACKWOODS (Stylized) Trademarks, by using a BLUNTWOODS (Stylized) trademark in connection with cigars, cigar wraps and cigar cones:





5.      Indeed, Defendant's BLUNTWOODS (Stylized) trademark is a purposefully deceptive imitation of Plaintiff's federally registered BACKWOODS Trademarks, including the BACKWOODS (Stylized) Trademarks, such that Defendants' use thereof constitutes trademark infringement.

6.      Defendant OG Grabba has filed, with the U.S. Patent and Trademark Office:

(i)      U.S. Trademark Application Serial No. 97/016,962 for the BLUNTWOODS (word) trademark, which is a purposefully deceptive imitation of Plaintiff's federally registered BACKWOODS Trademarks and BACKWOODS (Stylized) Trademarks; and

(ii)      U.S. Trademark Application Serial No. 97/504,013 for the WOOD'S SPRAY and Design trademark (shown below), which is a purposefully deceptive imitation of Plaintiff's federally registered BACKWOODS Trademarks and BACKWOODS (Stylized) Trademarks:



7.     All of Defendants' activities have been conducted in an effort to trade on the goodwill associated with Plaintiff's trademark rights.  By these activities, Defendants are liable for, and by this action Plaintiff seeks redress from, Defendants' trademark infringement, false designation of origin,  unfair competition and federal trademark dilution in violation of the Lanham Act of 1946, as amended, 15 U.S.C. §1051, *et seq*., unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110a, *et seq*., and unfair competition under the common law of the State of Connecticut.  By this action, Plaintiff also seeks an Order directing the Commissioner of Patents and Trademarks that Defendant OG Grabba's U.S. Trademark Application Serial Nos. 97/016,962 and 97/504,013 are not entitled to federal registration, on grounds of likelihood of confusion and/or dilution, pursuant to 15 U.S.C. § 1119, and an injunction prohibiting Defendants' continuing unlawful activities.  Plaintiff has no adequate remedy at law.

## **THE PARTIES**

8.     Plaintiff ITG is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 714 Green Valley Road, Greensboro, North Carolina  27408.

9.      Upon information and belief, Defendant OG Grabba is a limited liability company organized and existing under the laws of the State of Connecticut, having its principal place of business at 6A Northwood Dr., Bloomfield, CT 06002.  Attached hereto as Exhibit A is a true and correct copy of a business record from the Connecticut Secretary of State evidencing that Defendant OG Grabba has its principal place of business in Connecticut.  Upon information and belief, Defendant OG Grabba distributes, markets, advertises, offers for sale and sells infringing smoking products in the State of Connecticut and elsewhere.

10.      Upon information and belief, Defendant Tanash is the Managing Member of Defendant OG Grabba.  Upon information and belief, Defendant Tanash has an address at 6A Northwood Dr., Bloomfield, CT 06002.  Attached hereto as Exhibit A is a true and correct copy of a business record from the Connecticut Secretary of State evidencing that Defendant Tanash is the Managing Member Defendant OG Grabba.  Upon information and belief, Defendant Tanash has personally directed, controlled, ratified, participated in and/or been the moving force behind the unlawful activities of Defendant OG Grabba, and has personally committed the unlawful activities that form the subject matter of this Complaint.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. §1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1338(b) (pendant unfair competition claims) and 28 U.S.C. § 1367 (supplemental jurisdiction over state claims).

12.      This Court has personal jurisdiction over Defendant OG Grabba by virtue of the facts that it: (i) resides in the State of Connecticut; (ii) operates, conducts, engages in and is carrying on a business or business venture in the State of Connecticut; (iii) has an office in the State of

Connecticut; (iv) has transacted business within the State of Connecticut on a regular and consistent basis; and (v) has infringed Plaintiff's trademarks within the State of Connecticut.

13.    This Court has personal jurisdiction over Defendant Tanash by virtue of the facts that he:  (i) resides in the State of Connecticut; (ii) operates, conducts, engages in and is carrying on a business or business venture in the State of Connecticut; (iii) has an office in the State of Connecticut; (iv) has transacted business within the State of Connecticut on a regular and consistent basis; (v) has infringed Plaintiff's trademarks within the State of Connecticut; and (vi) has personally directed, controlled, ratified, participated in and/or been the moving force behind the unlawful activities of Defendant OG Grabba within the State of Connecticut.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).


**FACTS**

I.    **PLAINTIFF'S LONGSTANDING AND VALUABLE TRADEMARK RIGHTS**

15.    Plaintiff ITG is the owner of the trademarks associated with ITG's BACKWOODS brand line of cigars in the United States.

16.    Specifically, ITG is the owner of:

(i)    the BACKWOODS trademark and U.S. Trademark Registration No. 1,164,008 for "cigars" in International Class 34 on the Principal Register.  True and correct copies of ITG's registration certificate and most recent renewal confirmation for this trademark, and records from the U.S. Patent and Trademark Office's TSDR database showing the current status and title of U.S. Trademark Registration No. 1,164,008, are attached hereto as Exhibit B and incorporated herein by reference;

(ii)    the BACKWOODS trademark and U.S. Trademark Registration No. 3,268,658 for "ashtrays, cigar cases, tobacco cases, and cigarette lighters of precious metals" in International Class 14, and for "tobacco pouches; cigar cases not of precious metal" in International Class 34, on the Principal Register.  True and correct copies of ITG's registration certificate and most recent renewal confirmation for this trademark, and records from the U.S. Patent and Trademark Office's TSDR database showing the current status and title of U.S. Trademark Registration No. 3,268,658, are attached hereto as Exhibit C and incorporated herein by reference;

(iii)    the BACKWOODS (Stylized) trademark and U.S. Trademark Registration No. 4,923,532 for "cigarillos, cigars" in International Class 34 on the Principal Register:



True and correct copies of ITG's registration certificate for this trademark, and records from the U.S. Patent and Trademark Office's TSDR database showing the current status and title of U.S. Trademark Registration No. 4,923,532, are attached hereto as Exhibit D and incorporated herein by reference; and

(iv)    the BACKWOODS (Stylized) trademark and U.S. Trademark Registration No. 6,541,153 for "cigarillos; cigars" in International Class 34 on the Principal Register:



True and correct copies of ITG's registration certificate for this trademark, and records from the U.S. Patent and Trademark Office's TSDR database showing the current status and title of U.S. Trademark Registration No. 6,541,153, are attached hereto as Exhibit E and incorporated herein by reference.

17.    All of the trademarks set forth in paragraph 16 above are herein referred to collectively as the "BACKWOODS Trademarks."

18.    The trademarks set forth in subparagraphs 16(iii) and 16(iv) above are herein referred to collectively as the "BACKWOODS (Stylized) Trademarks."

19.    The BACKWOODS Trademarks have been in continuous use in this country since at least as early as May 2, 1979 by ITG's predecessors-in-interest, and subsequently, by ITG.

20.    ITG and its predecessors-in-interest have used the BACKWOODS Trademarks only in connection with quality cigars and licensed merchandise.  Through these efforts, the BACKWOODS brand line of cigars is one of the most popular and best-selling cigar brands in the United States.  The BACKWOODS brand line of cigars is extensively advertised and available virtually everywhere that cigars are sold throughout the United States, in thousands of retail locations and in all channels of trade.

21.    The BACKWOODS brand line of cigars was an overnight success.  Their unique structure and look, with a frayed end, tapered body and unfinished head, had great appeal to cigar smokers.  Smokers identified the cigar's image with America's "Wild West" and the type of tobacco products that cowboys used to smoke.  The rustically designed airtight foil pouch added to that look and, importantly, maintained the cigar's high moisture level.

22.    The unique style, taste, aroma and package have made the BACKWOODS brand line of cigars the number one selling all natural cigar in the world.  Annual retail sales of the

BACKWOODS brand line of cigars are in excess of $100 million.  The BACKWOODS brand line of cigars is available in many varieties, including Original, Sweet Aromatic, Honey, Honey Berry, Honey Bourbon, Banana, Dark Stout, Russian Cream and Black Russian.

23.    ITG is actively engaged in the development of BACKWOODS merchandise and in selective licensing of the BACKWOODS Trademarks.

24.    ITG and its predecessors-in-interest have widely and continuously promoted and advertised the BACKWOODS brand line of cigars utilizing the distinctive BACKWOODS Trademarks in the manner depicted below:

 

25.    The BACKWOODS Trademarks have a number of distinctive features, including, but not limited to, a logo for the brand name displayed: (a) in a distinctive font and style featuring stylized capital letters; (b) in a red and white color scheme; (c) with an outline surrounding and following the contours of the letters; (d) in an arcuate manner; and (e) with the first and last letters larger than and extending beneath the remainder of the letters.

26.    In addition, the BACKWOODS Trademarks are displayed on packaging that is covered with a distinctive "burlap" or "honeycomb" design.

27.    The BACKWOODS Trademarks with their distinctive features are used on packaging for the BACKWOODS brand line of cigars, in advertisements, on the Internet, in point of purchase materials and in other forums.

28.    The BACKWOODS Trademarks with their distinctive features are inherently distinctive to the public and the trade and serve primarily as designators of origin of ITG's BACKWOODS brand line of cigar products.

29.    Plaintiff's BACKWOODS Trademarks are famous.  They are widely recognized by the trade and the public and have built up extensive goodwill.

30.    As a result of the widespread use and display of Plaintiff's BACKWOODS Trademarks, as used in connection with cigars and ancillary goods: (a) the public and the trade use the BACKWOODS Trademarks to identify and refer to Plaintiff and its BACKWOODS brand line of cigars; (b) cigars and licensed goods marked with the BACKWOODS Trademarks are recognized by the trade and the public as quality goods emanating from a single source; and (c) the BACKWOODS Trademarks have built up secondary meaning and extensive goodwill.

## II.    DEFENDANTS' UNLAWFUL ACTIVITIES

### A.    Timeline of Defendants' Activities

31.    Upon information and belief, Defendants are engaged in the manufacture, importation, distribution, offering for sale and/or sale of smoking products that violate Plaintiff's valuable trademark rights.  Indeed, it appears that Defendants have engaged in conduct that is believed to reflect a purposeful intent to trade on the goodwill and business reputation of Plaintiff, its famous BACKWOODS Trademarks and its BACKWOODS brand line of cigars.

32.     On May 27, 2022, ITG sent a cease and desist letter to Defendant OG Grabba regarding:

(i)     its application to register BLUNTWOODS (word) for "Tobacco; Cigarettes and cigars; Leaf tobacco; Tobacco and tobacco substitutes; all of the foregoing not containing cannabis or for use with cannabis" in International Class 34 (the "BLUNTWOODS (word) Trademark"); and

(ii)     the stylized display of BLUNTWOODS as shown on the packaging below:





(the "BLUNTWOODS (Stylized) Trademark").

A true and correct copy of ITG's May 27, 2022 cease and desist letter is attached hereto as Exhibit F.

33.    The BLUNTWOODS (Stylized) Trademark incorporates distinctive features of the BACKWOODS Trademarks, including the BACKWOODS (Stylized) Trademarks.

34.    In the May 27, 2022 cease and desist letter, ITG explained that Defendant OG Grabba's use of BLUNTWOODS in the distinctive font and style of the BACKWOODS (Stylized) Trademarks is objectionable.

35.    Defendant OG Grabba did not respond to the May 27, 2022 cease and desist letter.

36.    On October 24, 2022, ITG filed a Notice of Opposition with the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB") against Defendant OG Grabba's U.S. Trademark Application Serial No. 97/016,962 for BLUNTWOODS (word) in Class 34 (Opposition No. 91281332).

37.    Subsequently, ITG learned that OG Grabba filed U.S. Trademark Application Serail No. 97/504,013 to register WOOD'S SPRAY and Design (shown below) for "Flavorings, other than essential oils, for tobacco" in International Class 34:



(the "WOOD'S SPRAY and Design Trademark").

38.     Having first begun to trade off of ITG's BACKWOODS Trademarks, including the BACKWOODS (Stylized) trademarks, in connection with their BLUNTWOODS products, it is clear that Defendants attempted to secure rights in the WOODS'S SPRAY and Design Trademark to build upon their use of BLUNTWOODS and in a further effort to unfairly capitalize on ITG's trademark rights.  The WOOD'S SPRAY and Design Trademark goes even further than the BLUNTWOODS (Stylized) Trademark in that it incorporates a font style and arcuate design that are nearly identical to those used in connection with the BACKWOODS (Stylized) Trademarks.

39.     On October 23, 2023, ITG filed a Notice of Opposition with the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB") against Defendant OG Grabba's U.S. Trademark Application Serail No. 97/504,013 for the WOOD'S SPRAY and Design Trademark (Opposition No. 91287811).

40.     At the discovery conferences in the above-referenced Oppositions, ITG expressed a willingness to resolve these disputes if Defendant OG Grabba was willing to amend the stylization of its trademarks.

41.     On November 13, 2023, ITG's counsel sent a proposal to Defendants' counsel for the resolution of both Oppositions.  Despite following up numerous times, Defendants have not responded to the settlement proposal.

42.     Plaintiff was thus left with no alternative but to commence this litigation.

**B.    Similarity of The Parties' Trademarks and Goods**

**(1)    BLUNTWOODS**

43.     There is a strong likelihood of confusion between Plaintiff's BACKWOODS Trademarks, on the one hand, and Defendants' BLUNTWOODS (word) Trademark, on the other hand, to wit:

(a)    the word portions of the parties' respective trademarks are confusingly similar in appearance:

(i)    the trademarks each consist of two syllables;

(ii)    the marks each contain an opening segment that:

(1) begins with the exact same consonant – B;

(2) contains an intervening vowel; and

(3) ends with a hard consonant;

(i.e., BACK and BLUNT);

(iii)    the second syllable in each trademark is the identical term "WOODS";

(b)    the word portions of the parties' respective trademarks are confusingly similar in pronunciation:

(i)    the marks are each pronounced in two segments, BACK-WOODS and BLUNT-WOODS;

(ii)    the first letter of the marks is identical and pronounced with the exact same "B" sound;

(iii)    the second segment of the marks is identical and is pronounced exactly the same, i.e., WOODS; and

(c)    the commercial impression derived by a consumer from the marks is similar because in each case the focus is on the second segment or syllable, namely, the term WOODS.

44.    In addition, BLUNTWOODS is evocative of cigars given the inclusion of the term BLUNT, which typically refers to a hollowed out cigar. Consumers are likely to believe that

14

Defendants' BLUNTWOODS products are a line extension of BACKWOODS cigars, e.g., a line of cigars, cigar wraps and cones that consumers may use to roll their own BACKWOODS cigars.

45.     Accordingly, the word portions of parties' respective trademarks are confusingly similar in appearance, pronunciation and meaning, resulting in a confusingly similar commercial impression.

46.     Importantly, Defendants are using the BLUNTWOODS (Stylized) Trademark shown below, which is deceptively similar to ITG's BACKWOODS (Stylized) Trademarks:







47.    The similarities between the parties' respective marks are substantial, to wit:

(a)    both marks contain all capital, stylized letters in a confusingly similar type font;

(b)    both marks utilize a red, white and black color scheme to display the letters;

(c)    both marks incorporate first letters that are larger than the remainder of the letters;

(d)    both marks incorporate letters containing "points" that extend backwards from the tops of the letters (*see*, e.g., "W" and "D" in both marks); and

(e)    both marks include an outline that surrounds and follows the contours of the letters.

48.    To make matters worse, Defendants have adopted elements of Plaintiff's distinctive packaging design, including:

(a)    a brand name displayed in red stylized capital letters at the top of the packaging;

(b)    a packaging design displaying diagonal cigars and cigar cones; and

(c)    flavor variants, including "Sweet Aromatic" and "Russian Cream", that are used in connection with BACKWOODS cigars.

49.    Significantly, ITG has registered its BACKWOODS (Stylized) Trademark in black and white, meaning that it has the right to display its mark in any colors, including red letters shaded in white:



50.    Defendants' BLUNTWOODS products, namely, cigars, cigar wraps and cigar cones, are identical and/or related to ITG's tobacco products and such products would travel and/or be promoted through the same channels of trade for sale to, and use by, the same class of purchasers.

51.    In view of the above-described similarities, it would be reasonable for consumers to believe that BLUNTWOODS products are associated with or authorized by BACKWOODS brand cigars.

(2)    **WOOD'S SPRAY and Design**

52.    There is a strong likelihood of confusion between Plaintiff's BACKWOODS Trademarks, on the one hand, and Defendants' WOOD'S SPRAY and Design Trademark, on the other hand, to wit:

    (a)    the marks each contain:

        (i)    two syllables;
        (ii)    one syllable of which is identical (i.e., WOODS);

    (b)    the marks are each pronounced in two segments, WOOD'S-SPRAY and BACK-WOODS;

    (c)    the marks each contain an identical WOODS syllable that is pronounced exactly the same; and

    (d)    the commercial impression derived by a consumer from the marks is similar because in each case focus is on the identical segment or

syllable, namely, the term WOODS.

53.     Defendants' WOOD'S SPRAY and Design Trademark is particularly objectionable in the context of ITG's BACKWOODS (Stylized) Trademarks, as evidenced by the following comparison:

  

54.     The similarities between the parties' marks, as evidenced by the comparison in paragraph 53, are self evident, to wit:

(a)     in each case, the word portions of the parties' respective marks are displayed in a distinctive font and style featuring stylized capital letters;

(b)     in each case, the word portions of the parties' respective marks are displayed in an arcuate manner (the WOOD'S SPRAY and Design Trademark goes a step further than the BLUNTWOODS (Stylized) Trademark in that it incorporates an arcuate design that is nearly identical to that used in connection with the BACKWOODS (Stylized) Trademarks);

(c)     Defendants' WOOD'S SPRAY and Design Trademark utilizes a similar type font and style as ITG's BACKWOODS (Stylized) Trademarks. For example:

(i)     the letters in Defendants' WOOD'S SPRAY and Design

Trademark contain "points" extending backwards from the tops of the letters, in exactly the same manner as the letters in ITG's BACKWOODS (Stylized) Trademarks contain "points" extending backwards from the top of the letters (see, e.g., the letters "W" and "D" in both marks);

(ii)    the first and last letters of WOOD'S and SPRAY in Defendants' WOOD'S SPRAY and Design Trademark are larger than and extend beneath the adjacent letters, similar to the manner in which the first and last letters of ITG's BACKWOODS (Stylized) Trademarks are larger than and extend beneath the adjacent letters; and

(iii)    Defendants' WOOD'S SPRAY and Design Trademark contains a black outline that surrounds and follows the contours of the letters of WOODS, in exactly the same manner as ITG's BACKWOODS (Stylized) Trademarks contain a black outline that surrounds and follows the contours of the letters.

55.    Accordingly, the stylization of Defendants' WOOD'S SPRAY and Design Trademark is confusingly similar to the stylization of ITG's BACKWOODS (Stylized) Trademarks.

56.    In addition, Defendants' use of the possessive WOOD'S is likely to cause consumers to mistakenly believe that WOOD'S SPRAY products emanate from and/or are a line extension of the famous BACKWOODS cigar brand.

57.    Defendants' WOOD'S SPRAY products, namely, flavorings for tobacco, are related to Opposer's tobacco products and such products would travel and/or be promoted through the same channels of trade for sale to, and use by, the same class of purchasers.

58.    In view of the above-described similarities, it would be reasonable for consumers to believe that WOOD'S SPRAY products are associated with or authorized by BACKWOODS brand cigars.

### C.    Impact of Defendants' Activities

59.    Defendants' actions are particularly objectionable because they selected trademark layouts and color schemes that mimic the trademark layouts and color schemes long used by Plaintiff and its predecessors in connection with Plaintiff's famous BACKWOODS brand line of cigars.

60.    Plaintiff has not authorized any of the Defendants to use any of its BACKWOODS Trademarks.

61.    Defendants': (a) BLUNTWOODS (word) Trademark; (b) BLUNTWOODS (Stylized) Trademark; and (c) WOOD'S SPRAY and Design Trademark; are herein referred to collectively as the "Infringing Trademarks".

62.    Defendants have utilized and/or utilize the Infringing Trademarks in connection with related products, i.e., smoking products, including cigars, cigar wraps, cigar cones and flavorings for tobacco (the "Infringing Products").  Defendants' products travel and/or are promoted through the same channels of trade for sale to, and use by, the same class of purchasers.

63.    Defendants advertise, offer for sale and/or sell the Infringing Products via the Internet and in other forums, including but not limited to via the social media site located at https://www.instagram.com/ogbrandsofficial/?hl=en.

64. Defendants have recklessly, willfully and intentionally violated Plaintiff's rights with the deliberate intention of trading on the valuable goodwill and reputation established by Plaintiff.

65. Defendants' use of: (1) the Infringing Trademarks; and (2) confusingly similar trademark layouts and color schemes; in connection with smoking products, constitutes infringement of Plaintiff's trademark rights in that it is likely to cause confusion, mistake or deception as to the source of origin of Defendants' products in that the public, the trade and others are likely to believe that Defendants' products are provided by, sponsored by, approved by, licensed by, affiliated with or in some other way legitimately connected to Plaintiff, its BACKWOODS Trademarks, its BACKWOODS brand line of cigars and/or licensed products including, without limitation, that Defendants' products may be line extensions of Plaintiff's BACKWOODS brand line of products.

66. Defendants' continued use of: (1) the Infringing Trademarks; and (2) confusingly similar trademark layouts and color schemes; in connection with smoking products as alleged, is likely to dilute the distinctiveness of Plaintiff's BACKWOODS Trademarks, thus hampering efforts by Plaintiff to continue to protect the outstanding reputation of its BACKWOODS brand line of cigars, resulting in loss of sales of genuine products and thwarting Plaintiff's considerable efforts and expenditures to promote its genuine products and to license its BACKWOODS Trademarks, all to Plaintiff's irreparable harm.

**First Cause of Action**
**(as to all Defendants)**

**DIRECT AND CONTRIBUTORY**
**INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS**

67.     This is a claim by Plaintiff for direct and contributory infringement of federally registered trademarks arising under Section 32 of the Lanham Act, 15 U.S.C. §1114.

68.     Plaintiff is the owner of valuable trademark rights in, and federal trademark registrations for, Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 15 through 30 herein.

69.     Defendants' use in commerce of colorable imitations of Plaintiff's federally registered BACKWOODS Trademarks, including without limitation colorable imitations of Plaintiff's federally registered BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 31 through 66 herein, is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' goods, services and commercial activities by Plaintiff.

70.     Defendants' activities, as alleged, constitute direct and/or contributory infringement of Plaintiff's federally registered BACKWOODS Trademarks, including without limitation Plaintiff's federally registered BACKWOODS (Stylized) Trademarks, in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114, all to the substantial and irreparable injury of the public and of ITG's business reputation and goodwill.

71.     By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with its registered trademarks, including diversion of customers from them, lost sales

and lost profits, and Defendants will be unjustly enriched.  Plaintiff has no adequate remedy at law.

**Second Cause of Action**
**(as to all Defendants)**

**TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN**

72.    This is a claim by Plaintiff for trademark infringement and false designation of origin arising under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

73.    Plaintiff is the owner of valuable trademark rights in Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 15 through 30 herein.

74.    Defendants' use in commerce of purposefully deceptive imitations of Plaintiff's BACKWOODS Trademarks, including without limitation purposefully deceptive imitations of Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 31 through 66 herein, is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' goods, services and commercial activities by Plaintiff.

75.    Defendants' activities, as alleged, constitute infringement and/or contributory infringement of Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, and direct and contributory false designation of origin, false representation and false description, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

76.    By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's

BACKWOODS (Stylized) Trademarks, including diversion of customers from Plaintiff, lost sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

**Third Cause of Action**
**(as to all Defendants)**

**FEDERAL TRADEMARK DILUTION**

77.    This is a claim for dilution of Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, arising under Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

78.    Plaintiff is the owner of valuable trademark rights in Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 15 through 30 herein.

79.    Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, are famous and had become famous prior to Defendants' first use of the Infringing Trademarks.

80.    Upon information and belief, Defendants' unauthorized use of trademarks that are purposefully deceptive imitations of Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 31 through 66 herein, dilutes Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, by tarnishing, blurring, weakening and/or diluting the distinctive quality of said trademarks.

81.    Upon information and belief, Defendants' dilution of Plaintiff's famous BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, has been reckless and/or willful.

82.     By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, including dilution of the trademarks, diversion of customers from Plaintiff, lost sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

### Fourth Cause of Action
### (as to all Defendants)

### FEDERAL UNFAIR COMPETITION

83.     This is a claim for unfair competition arising under Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

84.     Plaintiff is the owner of valuable trademark rights in Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 15 through 30 herein.

85.     Through their unauthorized use in commerce of purposefully deceptive imitations of Plaintiff's BACKWOODS Trademarks, including without limitation purposefully deceptive imitations of Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 31 through 66 herein, Defendants have engaged in acts of unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), *et. seq*.

86.     As a direct and proximate result of the foregoing acts of Defendants, Plaintiff has been damaged and has suffered and will continue to suffer immediate and irreparable harm. Unless restrained by the Court, Defendants will continue to cause irreparable injury and damage to Plaintiff and to the goodwill associated with the Plaintiff's trademark rights. Plaintiff has no adequate remedy at law.

**Fifth Cause of Action**
**(as to all Defendants)**

**CONNECTICUT UNFAIR TRADE PRACTICES**

87.    This is a claim for violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110a, *et seq.*

88.    Plaintiff is the owner of valuable trademark rights in Plaintiff's famous and distinctive BACKWOODS Trademarks, including without limitation Plaintiff's famous and distinctive BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 15 through 30 herein.

89.    Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, are famous and distinctive in the State of Connecticut and had become famous and distinctive in the State of Connecticut prior to Defendants' first use of the Infringing Trademarks.

90.    Defendants' use in commerce of purposefully deceptive imitations of Plaintiff's BACKWOODS Trademarks, including without limitation purposefully deceptive imitations of Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 31 through 66 herein, is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' goods, services and commercial activities by Plaintiff.

91.    Upon information and belief, Defendants' unauthorized use of trademarks that are purposefully deceptive imitations of Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 31 through 66 herein, dilutes Plaintiff's BACKWOODS Trademarks, including without limitation

Plaintiff's BACKWOODS (Stylized) Trademarks, by tarnishing, blurring, weakening and/or diluting the distinctive quality of said trademarks.

92.    Upon information and belief, Defendants' aforementioned acts have been willful.

93.    Defendants' aforementioned acts constitute unfair competition and unfair or deceptive acts or practices in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110a, *et seq*.

94.    By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, including dilution of the trademarks, diversion of customers from Plaintiff, lost sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

## Sixth Cause of Action
### (as to all Defendants)

## COMMON LAW UNFAIR COMPETITION

95.    This is a claim for unfair competition under the common law.

96.    Plaintiff is the owner of valuable trademark rights in Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 15 through 30 herein.

97.    Defendants' use in commerce of purposefully deceptive imitations of Plaintiff's BACKWOODS Trademarks, including without limitation purposefully deceptive imitations of Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 31 through 66 herein, is likely to cause confusion, mistake, or deception as to the affiliation, connection, or

association of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' goods, services and commercial activities by Plaintiff.

98.     By such acts, Defendants have engaged in acts of unfair competition under the common law.

99.     Plaintiff has been damaged by Defendants' aforementioned acts.

**Seventh Cause of Action**
**(as to Defendant OG Grabba)**

**DECLARATORY JUDGMENT THAT DEFENDANTS' TRADEMARKS**
**ARE NOT ENTITLED TO FEDERAL REGISTRATION**

100.     This is a claim for a declaratory judgment, pursuant to 15 U.S.C. § 1119 and 28 U.S.C. § 2201 *et seq.*, that Defendant OG Grabba's BLUNTWOODS (word) Trademark and WOOD'S SPRAY and Design Trademark are not entitled to federal registration.

101.     Plaintiff is the owner of valuable trademark rights in, and federal trademark registrations for, Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth more fully in paragraphs 15 through 30 herein.

102.     Defendant OG Grabba is the record owner of U.S. Trademark Application Serial No. 97/016,962 for the BLUNTWOODS (word) Trademark in block letters.

103.     Defendant OG Grabba is not using BLUNTWOODS in block letters as registered. Instead, Defendant OG Grabba is using BLUNTWOODS in a font and style that is confusingly similar to the BACKWOODS (Stylized) Trademarks.

104.     Defendant OG Grabba is the record owner of U.S. Trademark Application Serial No. 97/504,013 for the WOOD'S SPRAY and Design Trademark.

105.     Plaintiff believes that it is being damaged by U.S. Trademark Application Serial Nos. 97/016,962 and 97/504,013 because such applications are assisting Defendant OG Grabba in

the use of purposefully deceptive imitations of Plaintiff's registered and famous BACKWOODS Trademarks, including without limitation purposefully deceptive imitations of Plaintiff's registered and famous BACKWOODS (Stylized) Trademarks, as set forth more fully paragraphs 31 through 66 herein.

106.    Plaintiff's products are identical and/or related to products being utilized in connection with the trademarks covered by U.S. Trademark Application Serial Nos. 97/016,962 and 97/504,013, and such products would travel and/or be promoted through the same channels of trade for sale to, and use by, the same class of purchasers.

107.    Defendant OG Grabba's use of the trademarks in U.S. Trademark Application Serial Nos. 97/016,962 and 97/504,013 is likely to cause confusion, mistake or deception as to the source of origin of Defendant's products in that the public, the trade and others are likely to believe that Defendant's products are provided by, sponsored by, approved by, licensed by, affiliated with or in some other way legitimately connected to Plaintiff's BACKWOODS brand line of cigars and/or BACKWOODS licensed products, which bear Plaintiff's registered and famous BACKWOODS Trademarks, including without limitation Plaintiff's registered and famous BACKWOODS (Stylized) Trademarks.

108.    Defendant OG Grabba's use of the trademarks in U.S. Trademark Application Serial Nos. 97/016,962 and 97/504,013 will cause dilution of the distinctive quality of Plaintiff's registered and famous BACKWOODS Trademarks, including without limitation Plaintiff's registered and famous BACKWOODS (Stylized) Trademarks.

109.    Accordingly, Plaintiff seeks an order, pursuant to 15 U.S.C. § 1119 and 28 U.S.C. § 2201 *et seq.*, directing the Commissioner of Patents and Trademarks that U.S. Trademark

Application Nos. 97/016,962 and 97/504,013 are not entitled to federal registration, on grounds of likelihood of confusion and/or dilution.

110.    An actual and justiciable controversy exists between the parties.

111.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.    That the Court issue a permanent injunction restraining Defendants, their agents, servants, employees, successors and assigns and all others in concert and privity with them from:

(a)    Directly or indirectly exporting from any other country to the United States, importing into the United States, transshipping through the United States and/or causing, aiding, abetting or contributing to the exportation from any other country to the United States or to the importation into the United States or to the transshipment through the United States of:

i.    Any smoking products and/or smoking related products, including cigars, cigar wraps, cigar cones, flavorings for tobacco and/or tobacco products, that are packaged or labeled in a manner that makes any use as a trademark of the Infringing Trademarks, including without limitation the BLUNTWOODS (word) Trademark, the BLUNTWOODS and Design Trademark, the WOOD'S SPRAY and Design Trademark, and any trademark that is identical or confusingly similar to Plaintiffs' BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth in the Complaint; and

ii.    Any promotional materials or other items that are labeled with or contain facsimiles of the Infringing Trademarks, including without limitation the

30

BLUNTWOODS (word) Trademark, the BLUNTWOODS and Design Trademark, the WOOD'S SPRAY and Design Trademark, and any trademark that is identical or confusingly similar to Plaintiffs' BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth in the Complaint;

 (b) Directly or indirectly manufacturing, using, purchasing, possessing, offering to sell, advertising, promoting, marketing, transporting, distributing, selling or otherwise disposing of and/or causing, aiding, abetting or contributing to the manufacture, use, purchase, possession, offer for sale, advertisement, promotion, marketing, transportation, distribution, sale or other disposition in the United States of:

 i. Any smoking products and/or smoking related products, including cigars, cigar wraps, cigar cones, flavorings for tobacco and/or tobacco products, which are packaged or labeled in a manner that makes any use as a trademark of the Infringing Trademarks, including without limitation the BLUNTWOODS (word) Trademark, the BLUNTWOODS and Design Trademark, the WOOD'S SPRAY and Design Trademark, and any trademark that is identical or confusingly similar to Plaintiffs' BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth in the Complaint; and

 ii. Any promotional materials or other items that are labeled with or contain facsimiles of the Infringing Trademarks, including without limitation the BLUNTWOODS (word) Trademark, the BLUNTWOODS and Design Trademark, the WOOD'S SPRAY and Design Trademark, and any trademark that is identical or confusingly similar to Plaintiffs' BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth in the Complaint;

(c)    Using the Infringing Trademarks, including without limitation the BLUNTWOODS (word) Trademark, the BLUNTWOODS and Design Trademark, the WOOD'S SPRAY and Design Trademark, and any trademark that is identical or confusingly similar to Plaintiffs' BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth in the Complaint, in connection with the advertisement or promotion of Defendants' products, including via Internet websites and/or social media sites;

(d)    Directly or indirectly infringing Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth in the Complaint; and

(e)    Unfairly competing with Plaintiff;

2.    That the Court issue a judgment that Defendants' acts constitute direct and/or contributory infringement of Plaintiff's federally registered BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114;

3.    That the Court issue a judgment that Defendants' acts constitute trademark infringement and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

4.    That the Court issue a judgment that Defendants' acts caused dilution of Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c);

5.    That the Court issue a judgment that Defendants have engaged in acts of unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), *et. seq*;

6.      That the Court issue a judgment that Defendants' acts caused injury to Plaintiff's business reputation and dilution in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§ 42-110a, *et seq.*, and that the Court issue an injunction prohibiting Defendants from using purposefully deceptive imitations of Plaintiff's BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks;

7.      That the Court issue a declaratory judgment, pursuant to 15 U.S.C. § 1119 and 28 U.S.C. § 2201 *et seq.*,, directing the Commissioner of Patents and Trademarks that U.S. Trademark Application Serial Nos. 97/016,962 and 97/504,013 are not entitled to federal registration, on grounds of likelihood of confusion and/or dilution;

8.      That Defendants be required to deliver to Plaintiff for destruction all products, advertising and other promotional materials and other things possessed, used, distributed and/or available for sale by Defendants, or on their behalf, which have utilized the Infringing Trademarks, including without limitation the BLUNTWOODS (word) Trademark, the BLUNTWOODS and Design Trademark, the WOOD'S SPRAY and Design Trademark, and any trademark that is identical or confusingly similar to Plaintiffs' BACKWOODS Trademarks, including without limitation Plaintiff's BACKWOODS (Stylized) Trademarks, as set forth herein;

9.      That Defendants, jointly and severally, be required to account to and compensate Plaintiff for Defendants' profits and the actual damages suffered by Plaintiffs as a result of Defendants' acts of trademark infringement, false designation of origin and unfair competition in an amount to be proven at trial;

10.     That Plaintiff's recoveries be trebled and prejudgment interest be awarded, pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117);

11. That at Plaintiff's election before final judgment, that the Court award statutory damages pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117(c));

12. That Defendants, jointly and severally, be required to pay compensatory and punitive damages for their acts of unfair trade practices to the maximum extent permitted by law in an amount to be proven at trial;

13. That Defendants, jointly and severally, be compelled to pay Plaintiff's attorneys' fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117);

14. That pre-judgment and post-judgment interest be awarded to the maximum extent provided by law; and

15. That Plaintiff obtains such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand trial by jury for all issues so triable as a matter of law.

Dated:  March 4, 2025

Respectfully submitted,

GRIMES LLC


_/s/  Russell D. Dize_____
Charles W. Grimes
Russell D. Dize (Bar No. 23064)
15 River Rd. #15b
Wilton, Connecticut 06897

8890 Terrene Court, Unit 102
Bonita Springs, Florida 34135

Telephone: (239) 330-9000

_grimes@gandb.com_
_dize@gandb.com_

_Attorneys for Plaintiff_
_ITG Cigars Inc._

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing <u>Complaint</u> has been furnished electronically on March 4, 2025 with the Clerk of the Court using CM/ECF. The undersigned also certifies that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: *<u>/s/ Russell D. Dize</u>*